This is a suit, under the Veterans Reemployment Act, 38 U.S.C. § 2021, et seq. (1970, Supp. IV), for back pay and restoration to his government position by a former employee of the Internal Revenue Service who served in the Air Force for over five years. Both parties have moved for summary judgment and the facts are not contested. Oral argument has been had.
Plaintiff Randall Higginbotham was employed by the Revenue Service from June 1968 to November 1969. Because he did not want to be drafted, he applied (in April 1969) for an Air Force commission, indicating that his first choice was pilot training, and his second was navigator training. At that time he agreed with the Air Force that he had to serve a minimum of four years of active duty or if *657 selected for flying training four years from date of award of aeronautical rating, "or 5 years if entered into flying training after 1 January 1970.” In the middle of November 1969 he resigned his position at IRS, saying that he had been selected for a class at Officer Training School beginning November 20, 1969 "and I am projected for assignment in the Pilot Utilization Field. I have enlisted in the United States Air Force for a period of six years in order to accept this position.”
On entry onto active duty in November 1969 plaintiff went to Officer Training School[1] and was then commissioned in March 1970 and assigned to pilot training for a 53-week course which he successfully completed. He then received an aeronautical rating and a commitment to remain on active duty was established to end on March 26, 1976. He served on active duty until he was released on January 1, 1976. His total service amounted to six years, one month, and 19 days.
On return to civilian life he applied for reinstatement to his IRS post under the Veterans Reemployment Act, supra, but was turned down on the ground that reinstatement was mandatory only for those serving no more than five years. He appealed to the Federal Employees Appeals Authority which affirmed the IRS. This suit was then filed in the District Court for the Western District of Tennessee and was transferred here under 28 U.S.C. § 1406(c).
In selecting those veterans to whom it desired to grant mandatory reinstatement after military service, Congress imposed certain time limits on the individual’s service— obviously because it did not wish to give this reemployment privilege to persons it regarded as career servicemen. The provision governing here is 38 U.S.C. § 2024, and subsections (a) and (b)(1) have both been argued to us, though plaintiff finally opted (on oral argument) for (b)(1) as the proper subdivision for his case.[2]
*658 Subsection (b)(1) is restricted to those veterans whose active duty after August 1,1961, did not "exceed four years (plus in each case any additional period in which such person was unable to obtain orders relieving such person from active duty).” Even if plaintiffs time in basic officer training and in pilot training (about 64 weeks altogether) were deductible from his total service (6 years, 1 month, 19 days) — a claim which he does not make as to subsection (b)(1) — he would exceed the four-year limit. The only escape valve would be the extension permitted for "any additional period in which such person was unable to obtain orders relieving such person from active duty.” Plaintiff insists that he is covered by that exception because, after completion of his pilot training, he was unable, by virtue of his active duty commitment, to obtain relief orders until *659 1976. We think, however, that this statutory exception was not meant to apply to a person, like Mr. Higginbotham, who knowingly enters the armed service and remains there with a continuous commitment to spend more than four years.
As pointed out supra, plaintiffs original application for a commission indicated that if selected for flying training he would have to spend four years on active duty from the date of award of his aeronautical rating (i.e., after pilot training)[3] and would have to spend five years on active duty if he entered into flying training after January 1, 1970 (as in fact he did). That he understood this commitment is plain from his statement, in resigning from IRS, that "I have enlisted in the United States Air Force for a period of six years in order to accept this position” (i.e., training to be a pilot). It is clear to us, therefore, that § 2024(b) (1) cannot apply to plaintiff.[4]
Although plaintiff did not in the end stress subsection (a) of § 2024, we discuss it to demonstrate its inapplicability. Subsection (a) limits total service to five years but service in excess of four years after August 1, 1961 must be "at the request and for the convenience of the Federal Government (plus in each case any period of additional service imposed pursuant to law).” Even if we disregard the exclusion of reservists from subsection (a),[5] plaintiff fails to meet the criteria for service in excess of four years after August 1, 1961. For reasons comparable to those expressed above in discussing the exception provision of subsection (b), Mr. Higginbotham’s additional service cannot be considered "at the request and for the convenience of the Federal Government,” nor was it "imposed pursuant to law.” Neither of those categories covers a voluntary entry into the armed forces in 1969, at the serviceman’s own *660 initiative, with an express obligation to serve on active duty for more than a total of four years if selected (as plaintiff himself requested) for flying training (and for more than a total of five years if flying training began, as it did, after January 1, 1970).
Plaintiff says, with respect to subsection (a), that in any event the time he spent in officer and pilot training (64 weeks) was "active duty for training” which must be excluded from his total active duty under Federal Personnel Manual, Chapter 353, Appendix B, Section B-2(3). The Personnel Manual does not define "active duty for training” but the definition of that term in the Air Force Regulations, 32 CFR § 888.1,[6] indicates that the touchstone is whether the serviceman automatically reverts to the Reserve not on active duty when the period of training duty is completed; the specification in the second sentence of § 888.1 of "school tours” (and others) assumes the existence of the basic condition expressed in the first sentence. It is indisputable that plaintiff did not revert to inactive duty after either of his so-called "training tours”; he continued on active duty for several years. The result is that he cannot deduct the 64 weeks he claims as "active duty for training.”
We hold, for these reasons, that plaintiff cannot recover back-pay and is not entitled to reinstatement in the IRS. The defendant’s motion for summary judgment is granted, the plaintiffs cross-motion for partial summary judgment is denied, and the petition is dismissed.
IT IS SO ORDERED.
Plaintiffs motion for rehearing was denied March 27, 1979.

 This period of officer training was apparently as an enlisted man in the Regular Air Force. The rest of plaintiffs service was in the Reserve.

 38 U.S.C. § 2024(a) and (b) provide:
(a) Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enlists in the Armed Forces of the United States (other than in a Reserve component) shall be entitled upon release from service under honorable conditions to all of the reemployment rights and other *658 benefits provided for by this section in the case of persons inducted under the provisions of the Military Selective Service Act (or prior or subsequent legislation providing for the involuntary induction of persons into the Armed Forces), if the total of such person’s service performed between June 24, 1948, and August 1, 1961, did not exceed four years, and the total of any service, additional or otherwise, performed by such person after August 1,1961, does not exceed five years, and if the service in excess of four years after August 1, 1961, is at the request and for the convenience of the Federal Government (plus in each case any period of additional service imposed pursuant to law).
(b)(1) Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enters upon active duty (other than for the purpose of determining physical fitness and other than for training), whether or not voluntarily, in the Armed Forces of the United States or the Public Health Service in response to an order or call to active duty shall, upon such person’s relief from active duty under honorable conditions, be entitled to all of the reemployment rights and benefits provided for by this chapter in the case of persons inducted under the provisions of the Military Selective Service Act (or prior or subsequent legislation providing for the involuntary induction of persons into the Armed Forces), if the total of such active duty performed between June 24,1948, and August 1,1961, did not exceed four years, and the total of any such active duty, additional or otherwise, performed after August 1, 1961, does not exceed four years (plus in each case any additional period in which such person was unable to obtain orders relieving such person from active duty).
(2) Any member of a Reserve component of the Armed Forces of the United States who voluntarily or involuntarily enters upon active duty (other than for the purpose of determining physical fitness and other than for training) or whose active duty is voluntarily or involuntarily extended during a period when the President is authorized to order units of the Ready Reserve or members of a Reserve component to active duty shall have the service limitation governing eligibility for reemployment rights under subsection (b)(1) of this section extended by such member’s period of such active duty, but not to exceed that period of active duty to which the President is authorized to order units of the Ready Reserve or members of a Reserve component. With respect to a member who voluntarily enters upon active duty or whose active duty is voluntarily extended, the provisions of this subsection shall apply only when such additional active duty is at the request and for the convenience of the Federal Government.

 This four-year period would necessarily come after his periods of basic training and pilot training.

 Plaintiff complains that this construction of § 2024 "penalizes” him for not "washing-out” of pilot training; if he had, he says, he would not have had to stay in the Air Force as long as he did. Whether this is so or not, we think that Congress did not intend to cover persons who actually served as long as he did and under his type of longer-term commitment. Plaintiff had the benefits of pilot training and of service as a pilot-officer, benefits he would not have had if he had "washed-out.”

 Except for his 12-week basic training period, plaintiff served wholly in the Reserve.

 "(b) Active duty for training. A tour of active duty for Reserve training under orders which provide for automatic reversion to the Air Reserve Forces not on active duty when the specified period of active duty is completed. Includes the tour of active duty for training performed by non-prior service appointees and enlistees, other short or special tours, and school tours.”